## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| WINAMAC SOUTHERN RAILWAY, COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) NO. 3:09-CV-86 <br>) |
| TOLEDO, PEORIA AND WESTERN, CORPORATION, | )<br>)<br>) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on: (1) Plaintiff's Motion for Summary Judgment (DE# 46), filed on December 30, 2011; and (2) Defendant and Counterclaimant's Cross-Motion for Summary Judgment (DE# 52), filed on February 23, 2012. For the reasons set forth below, Defendant's Cross-Motion for Summary Judgment is **GRANTED in part and DENIED in part**. To the extent Defendant seeks summary judgment on the issue that Plaintiff is not entitled to assign its rights under the trackage rights agreement, this motion is **GRANTED**. To the extent Defendant seeks summary judgment on the issue that Plaintiff's assignment constitutes a material breach of the trackage rights agreement, this motion is **DENIED**. Plaintiff's motion for summary judgment is **DENIED**.

BACKGROUND

On February 5, 2009, Plaintiff, Winamac Southern Railway Company ("Winamac"), filed a complaint for declaratory relief against, Defendant, Toledo, Peoria and Western Railway Corporation ("Toledo"), and Toledo filed a counterclaim against Winamac. Essentially, the dispute centers around whether the trackage rights agreement ("TRA") between Winamac and Toledo allows Winamac to assign its rights under the TRA and whether the TRA has been terminated due to Winamac's assignment.

Both parties have filed motions for summary judgment on these issues.

DISCUSSION

Facts

The material facts of this case are undisputed. The three miles of rail track at issue begin at mile-post 71.5 at Van, Indiana and extend east to mile-post 74.5 at Logansport, Indiana ("the trackage rights line"). Winamac obtained overhead or "bridge trackage rights" to the trackage rights line in 1995 in connection with the sale of several railroads to A&R Line, Inc. ("A&R"). Around March of 1994, Winamac purchased seventy-five miles of railroad extending from Kokomo, Indiana through Logansport, Indiana to Winamac, Indiana and Bringhurst, Indiana from the State of Indiana.

In 1995, Winamac sold the section of the track from Logansport, Indiana to Winamac, Indiana to A&R. As a condition of the sale, Winamac retained bridge trackage rights to the Winamac Line which connected two of Winamac's otherwise disconnected lines. This agreement is memorialized in the TRA.

In 2002, A&R merged into Toledo, Peoria & Western Corporation ("Toledo") and Toledo succeeded to A&R's interests. The TRA contains ten articles containing specifications as to the terms and volume of use, terms for repair, maintenance and renewal, terms for access fees, liability and termination. The provisions at issue in this litigation are Section 2.01 and Article 7.

Section 2.01 of the TRA states:

> <u>Common Usage of Facilities</u>. [Winamac's] use of the Facilities shall be in common with [Toledo] and any other use of the Facilities, and [Toledo's] right to use the Facilities shall not be diminished by the Agreement. [Toledo] shall retain the sole right to grant to other persons rights of any nature in the facilities.

Article 9 states, in pertinent part:

> <u>Default and Termination</u>. In the event of any substantial failure on the part of [Winamac] to perform its obligation under this Agreement and its continuance in such default for a period of five (5) days after written notice given in accordance with Section 10.01 by [Toledo], [Toledo] shall have the right at its option, after first giving two (2) days notice thereof by written notice given in accordance with Section 10.01, and notwithstanding any waiver by [Toledo] of any prior breach thereof, to terminate the Trackage Rights and [Winamac's] use of the Facilities.

Winacamc hired U.S. Rail Corporation ("U.S. Rail") to manage its operations. Winamac and U.S. Rail executed a Railroad Operating Lease wherein Winamac leased its rights, including its

trackage rights under the TRA, to U.S. Rail.  Toledo notified Winamac that it believed Winamac's assignment of its rights under the TRA to U.S. Rail constituted a substantial failure of Winamac's obligation to perform under the TRA, justifying termination if not cured.  On January 2, 2009, Toledo advised Winamac that it was terminating the TRA pursuant to Article 7.

Motion for Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the

movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. Where the parties file cross-motions for summary judgment, the Court must consider each motion, but despite the parties' agreement that no genuine issue of material fact exists, the parties must still establish

their rights to judgment as a matter of law. *Grabach v. Evans*, 196 F. Supp. 2d 746, 747 (N.D. Ind. 2002).

Declaratory Judment

Winamac has filed a declaratory judgment complaint, Toledo filed a counterlcaim, and both parties are seeking summary judgment regarding whether Winamac's rights under the TRA are assignable and, if not, whether Winamac's assignment constitutes a material breach of the TRA. Declaratory judgment actions allow prompt settlement of actual controversies and establish the legal rights and obligations that will govern the parties' relationship in the future. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002).

Courts have discretion in deciding whether to provide declaratory relief. Five factors to be weighed in deciding whether to grant declaratory relief include: "(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and states courts and encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective." *NUCOR*, 28 F.3d at 579.

The parties agree that declaratory relief is appropriate here. Indeed, they are both seeking it. Moreover, after examining the five factors enunciated in *NUCOR*, this Court believes declaratory relief to be warranted.

The TRA does not allow Toledo to assign or lease its rights.

Typically, "unless the parties have agreed otherwise, contract rights are freely assignable. . .." *United States v. Doe*, 940 F.2d 199, 205 (7th Cir. 1991). "[P]arties may include an anti-assignment provision in the contract, prohibiting (1) the assignment of rights, (2) the assignment of duties, or (3) both. But, careful detail must be given to the language of the such provision." *Traicoff v. Digital Media, Inc.*, 439 F.Supp.2d 872, 879 (S.D. Ind. 2006).

Construction of the terms of a written contract, including an anti-assignment clause, is a question of law. *Ruse v. Bleeke*, 914 N.E.2d 1, 14 (Ind. Ct. App. 2009)(citing *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 655 (Ind. Ct. App. 2004). "The goal of contract interpretation is to ascertain and give effect to the parties' intent. When interpreting the meaning of the words used in a contract, [the court] must first determine if the contract is ambiguous." *Id.* If it is no ambiguity, the Court will "give the terms of [the] contract their plain and ordinary meaning. *Id.*

Toledo argues that the TRA does not contain an anti-assignment

clause and is therefore assignable. Citing *Traicoff*, Toledo argues that Section 2.01 does not use the requisite language to prohibit assignment. Simply put, Toledo posits that the TRA must include explicit language forbidding assignments in order to be an effective anti-assignment clause. Despite Toledo's insistence, there is nothing in Indiana law that requires an anti-assignment clause to contain the word "assignment," in order to preclude an assignment. Rather than requiring some sort of magical language, what an anti-assignment clause needs is clarity; in order to be effective, the clause needs to clearly preclude an assignment.

Tellingly, in *Traicoff*, the court was faced with a contract that "merely prohibit[ed] the assignment of 'the contract,' but failed to detail whether the prohibition applie[d] to the assignment of rights, duties, or both. *Id.* Because the "contract fail[ed] to clearly state that the anti-assignment provision was intended to prohibit [the] assignment of rights," the court found that the anti-assignment clause did not preclude the assignment of rights. *Id.* at 880. In no way did *Traicoff* hold that the word "assignment" must be used in an anti-assignment clause in order to preclude assignment. Instead, *Traicoff* found only that an anti-assignment clause must clearly detail the prohibited assignment. That is exactly what Section 2.01 does. Section 2.01 states that Toledo "shall retain the sole right to grant to other persons rights of any nature in the Facilities." This Court finds that Section 2.01 is unambiguous in prohibiting Winamac from assigning

(or leasing) any of its rights to any third party.  This is true when read in isolation or in context of the entire TRA.[1]

> There is a question of fact as to
> whether Toledo's assignment materially breached the TRA.

According to Article 7 of the TRA, Toledo may terminate the agreement upon Winamac's substantial failure to perform.  Toledo acknowledges that courts often decline "to hold as a matter of law that a breach of a covenant restricting assigning and subletting is always material."  *Collins v. McKinley*, 871 N.E.2d 363, 375 (Ind. Ct. App. 2007).  Whether such a breach is material is "generally a question of fact to be decided by the trier of fact."  *Id.*  Despite this acknowledgment, however, Toledo argues that because the instant litigation involves the heavily regulated railroad industry, which has many potential hazards, this Court should hold that the breach of a contractual provision prohibiting assignment is a material breach as a matter of law.

The problem with Toledo's argument is that it is not well developed.  Toledo fails to convince this Court that Winamac'sbr breach constitutes a material breach as a matter of law.  Toledo does not cite to a single piece of legal authority that has found such a breach constitutes a material breach simply because the

---

[1] Winamac offers extrinsic evidence in an effort to show that the parties' intent was to allow assignment of its rights under the TRA.  However, because the TRA's language is unambiguous, the Court will not look beyond the four corners of the contract.  *Dave's Excavating, Inc. v. City of New Castle*, 959 N.E.2d 369, 367-77 (Ind. Ct. App. 2012).

contract in question involved the railroad industry.

CONCLUSION

For the reasons set forth below, Defendant's Cross-Motion for Summary Judgment is **GRANTED in part and DENIED in part**. To the extent Defendant seeks summary judgment that Plaintiff is not entitled to assign its rights under the trackage rights agreement, this motion is **GRANTED**. To the extent Defendant seeks summary judgment that Plaintiff's assignment constitutes a material breach of the trackage rights agreement, this motion is **DENIED**. Plaintiff's motion for summary judgment is **DENIED**.

**DATED: July 9, 2012**             **/s/RUDY LOZANO, Judge**
                                                **United States District Court**